UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FOZIA MURPHY,

                        Plaintiff,                1:24-cv-01470 (AMN/PJE)

v.

THOMAS KRENS; NICHOLAS KRENS; GCAM, LLC;
GCAM 2, LLC; EMRCA, INC.;

                        Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SMITH HOKE, PLLC | MEREDITH A. MORIARTY |
| 16 Wade Road | |
| Latham, New York 12110 | |
| *Attorneys for Plaintiff* | |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM DECISION AND ORDER

### I. INTRODUCTION

On December 4, 2024, plaintiff Fozia Murphy ("Plaintiff") commenced this action against Defendants Thomas Krens, Nicholas Krens, GCAM, GCAM 2, and EMRCA ("Defendants") pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Equal Pay Act regulation 29 C.F.R. § 1620.33, New York Labor Law, N.Y. Lab. Law §§ 190 *et seq.*, 650 *et seq.* ("NYLL"), and New York State common law. Dkt. No. 1 ("Complaint"). Presently before the Court is Plaintiff's motion for a default judgment under Rule 55(b) of the Federal Rules of Civil

Procedure. Dkt. No. 14 ("Motion").

For the reasons set forth below, the Motion is denied.

## II. BACKGROUND

### A. Parties

Plaintiff is an individual domiciled in Rensselaer County, New York who was employed by Defendant Thomas Krens. Dkt. No. 1 at ¶¶ 11-12, 15. At all relevant times, Defendant Thomas Krens was Chairman and CEO of GCAM, LLC, GCAM 2, LLC and EMRCA, Inc. (hereinafter "GCAM", "GCAM 2", and "EMRCA", respectively; collectively, "the Companies"). *Id.* at ¶ 2. Likewise, Defendant Nicholas Krens was an officer, allegedly the Directory of Strategy, for those same Companies. *Id.* at ¶ 3.

GCAM and GCAM 2 are international art and architecture firms that offer advice, expertise, and services relating to art, culture, and art museums for various kinds of clientele. *Id.* at ¶ 4. Both have their principal place of business in New York. *Id.* at ¶¶ 4-5. GCAM is organized under the laws of New York while GCAM 2 is organized under the laws of Delaware. *Id.* EMRCA is a Delaware corporation formed for the purpose of developing an art museum and its principal place of business is in Massachusetts. *Id.* at ¶ 6.

### B. Plaintiff's Factual Allegations

In December 2021, Defendant Thomas Krens interviewed and hired Plaintiff to be his Executive Assistant and Office Manager. *Id.* at ¶¶ 11-12. Plaintiff alleges that Defendants offered her at-will employment with an initial payment rate of $33.65 per hour, forty hours per week. *Id.* at ¶¶ 13-14. Plaintiff also alleges that Defendants communicated that they would evaluate her performance and discuss increased compensation after three months. *Id.* at ¶ 14.

Plaintiff alleges that Defendant companies GCAM, GCAM 2, and EMRCA were related

entities and that the parties referred to them interchangeably. *Id.* at ¶ 15. Plaintiff worked full-time remotely for Defendants for approximately one and one-half years before the events leading to this suit. *See id.* at ¶¶ 15, 24, 26. Defendants initially used a payroll company and paid Plaintiff regularly out of accounts under both GCAM 2 and EMRCA. *Id.* at ¶¶ 15, 25. Plaintiff that alleges she started at a salary of approximately $75,000 per year, which was soon increased to $80,000 per year. *Id.* at ¶ 22.

In the spring and summer of 2023, however, Plaintiff alleges that Defendant Thomas Krens claimed that the Companies were short on money and stopped using the payroll company. *Id.* at ¶ 26. Instead, Defendant Thomas Krens started paying employees through wire transfers or personal checks. *Id.* At this point, Plaintiff alleges that Defendants started to pay her some, but not all, of her salary. *Id.* ¶ 28; *see* Dkt. No. 14-2 (payroll detailing from Nov. 11, 2022, to Dec. 21, 2023).

Plaintiff next alleges that in October 2023, Defendant Thomas Krens told her that the Companies were insolvent. Dkt. No. 1 at ¶ 30. Plaintiff alleges that he then stopped paying most employees, including Plaintiff. *Id.*; *see* Dkt. No. 14-2 at 4 (showing no payments between October 12, 2023 and December 21, 2023). Various other employees began to complain, and some quit. Dkt. No. 1 at ¶ 31. Plaintiff also complained at various points, requesting back pay through in-person communications, emails, and text messages to Defendants Thomas and Nicholas Krens. *Id.* at ¶¶ 29, 32. In response, they assured Plaintiff several times that they would pay her and all their employees what they were owed once Defendants had received enough money from their clients to become solvent. *Id.* at ¶¶ 29, 33, 44; *see* Dkt. No. 14-3 (text message conversation with Nicholas Krens).

Plaintiff states that she continued to work for Defendants until the beginning of February

3

2024. *Id.* at ¶ 45. During the period when the Companies were allegedly short on money and then insolvent, Plaintiff states that Defendants never terminated her, did not ask her to stop working, and did not reduce her hours. *Id.* at ¶ 42. Rather, Plaintiff alleges that, despite not receiving a paycheck, she was in constant contact with clients and vendors, received and completed daily administrative tasks from Thomas Krens, and provided information and status updates to Nicholas Krens. *Id.* at ¶¶ 38-42. As such, Plaintiff alleges that both Thomas and Nicholas Krens knew that she was working but did not pay her for that work. *Id.* at ¶ 43.

As of the filing of this action, Plaintiff alleges that Defendants have never paid her full earned wages for the pay periods during which she was underpaid, or her salary for the months that she worked without receiving a paycheck. *Id.* at ¶¶ 46, 50.

### C. Procedural History

On December 4, 2024, Plaintiff filed this suit claiming violations under the FLSA and NYLL, as well as state law claims for breach of contract, unjust enrichment, and promissory estoppel. Dkt. No. 1 at ¶¶ 47-106. Defendants have neither responded nor appeared in this action. *See generally* Docket Sheet. Plaintiff's attorney documented two brief interactions in which she spoke to an attorney who claimed to work for Defendants but who stated that he would not be representing them in this matter. Dkt. No. 7.

The clerk of court made entry of default on April 14, 2025. Dkt. No. 12. Plaintiff subsequently moved for the entry of default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and Local Rule 55.2. Dkt. No. 14. Plaintiff seeks to recover damages consistent with the underpayment of her wages, along with statutory fines, attorney's fees, prejudgment

interest, liquidated damages, and costs, totaling $193,216.  Dkt. No. 14-4 at ¶¶ 15-35.

### III. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  The first step is governed by Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id.* (quoting Fed. R. Civ. P. 55(a)); *see also* N.D.N.Y. L.R. 55.1 (setting forth affidavit requirements).  Entry of a default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis*, 645 F.3d at 128.  The second step "requires the plaintiff to seek a judgment by default under Rule 55(b)." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011).  Entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled[.]" *Mickalis*, 645 F.3d at 128.  A default judgment "ordinarily must be entered by the district judge, rather than by the clerk of court, except in certain circumstances[.]" *Id.*; *see also* N.D.N.Y. L.R. 55.2 (setting forth requirements for requesting a default judgment).

"Before entering a default judgment, the court 'must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law.'" *Windward Bora, LLC v. Brown*, No. 21-cv-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (alteration in original) (quoting *Jian Hua Li v. Chang Lung Grp. Inc.*,

No. 16-cv-6722, 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020)). The plaintiff bears the burden of showing that the uncontroverted facts establish the liability of each defendant on each cause of action. *Gould v. Marconi Dev. Grp. LLC*, 1:19-CV-1454 (MAD/DJS), 2020 WL 2042332, at *3 (N.D.N.Y Apr. 28, 2020) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). But in determining whether the plaintiff has met that burden, the Court draws "all reasonable inferences from the evidence offered" in favor of the plaintiff. *Id.*

Additionally, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (citations omitted). When evaluating a request for a default judgment, a "district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis*, 645 F.3d at 129 (quoting Fed. R. Civ. P. 55(b)(2)(B)-(C)).

While a court may enter a default judgment if the requisite standard is satisfied, the Second Circuit has cautioned that default judgments "are generally disfavored and are reserved for rare occasions[.]" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Because we have 'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . we have characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'" *Mickalis*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron*, 10 F.3d at 95; and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).

## IV.   DISCUSSION

### A.  Jurisdictional Requirements

Plaintiff alleges that this Court has subject matter jurisdiction over this case and personal jurisdiction over these defendants.  While a "plaintiff has the burden to establish jurisdiction, a federal court has an independent obligation to determine whether subject-matter jurisdiction exists 'even in the absence of a challenge from any party.'" *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 330 (E.D.N.Y. Jan. 22, 2024) ("*Wilmington*") (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).  If the Court determines at any point that it lacks jurisdiction over a matter, it must dismiss the complaint regardless of the merits.  *Gould*, 2020 WL 2042332, at *6 (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996).

Federal question jurisdiction exists over Plaintiff's FLSA claim, 28 U.S.C. § 1331, and supplemental jurisdiction exists over Plaintiff's state law claims, 28 U.S.C. § 1367.  The Court has personal jurisdiction over Defendants Nicholas Krens, GCAM, and GCAM 2 because they are domiciled in New York, *see* N.Y. C.P.L.R. § 301, and over Defendants Thomas Krens and EMRCA because they transact business in New York, *see* N.Y. C.P.L.R. § 302(a)(1).  Dkt. No. 1 at ¶ 8.  In addition, all Defendants were properly served.[1]  Finally, venue is proper in this District, as it is where Plaintiff resides and where events relevant to the causes of action allegedly occurred.

---

[1] Thomas Krens was served via "mail and affix" service at his Williamstown, Massachusetts residence.  Dkt. No. 6 at 1; *see* N.Y. C.P.L.R. 308(4).  Nicholas Krens was served via his wife Kendra Krens, a person of suitable age and discretion, at his Brooklyn, New York residence.  Dkt. No. 6 at 2; *see* Fed. R. Civ. P. 4(e)(2)(B).  GCAM was served pursuant to New York Limited Liability Company Law.  Dkt. No. 5 at 1; *see* N.Y. Ltd. Liab. Co. § 303 (McKinney 2023).  GCAM 2 and EMRCA were served pursuant to New York Business Corporation Law for service of process on an unauthorized foreign corporation.  Dkt. No. 5 at 2-5; *see* N.Y. Bus. Corp. Law § 307 (McKinney 2023).

7

28 U.S.C. § 1391; Dkt. No. 1 at ¶ 9.

Accordingly, the Court finds that the jurisdictional requirements are satisfied. *Windward Bora*, 2022 WL 875100, at *2.

### B. Procedural Requirements

Here, Plaintiff requested and received an entry of default in compliance with Rule 55(a) and Local Rule 55.1. Dkt. Nos. 9-4, 12. Next, Plaintiff properly filed the present Motion in accordance with Rule 55(b). Dkt. No. 14. The Motion does not include a certificate of service demonstrating that Defendants received the Motion. *See generally id.* But because Defendants were served at the commencement of this action and have not "appeared personally or by a representative," Fed. R. Civ. P. 55(b)(2), Plaintiff was not required to effectuate further service with respect to the Motion. *See, e.g., Alston v. City of New York*, No. 22-cv-5395, 2024 WL 4100175, at *5 (E.D.N.Y. Sept. 5, 2024) ("This limitation in the rule is based on the common-sense assumption that if a party has ignored service of a summons and complaint, a plaintiff does not have to chase him down with subsequent notices to see if he has changed his mind."), *appeal filed*, No. 24-2521 (2d Cir. Sept. 25, 2024); *Rove LLC v. Antonio168*, No. 20-cv-02124, 2023 WL 6796034, at *3 n.4 (S.D.N.Y. Oct. 13, 2023) (similar). Accordingly, the Court finds that Plaintiff has satisfied the procedural requirements for seeking a default judgment. *Windward Bora*, 2022 WL 875100, at *2.

### C. Liability

The Court next "determine[s] whether—after taking all well-pleaded allegations as true and making reasonable inferences in the plaintiff's favor—the plaintiff's 'allegations establish . . . liability as a matter of law.'" *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024) (alteration in original) (first quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); and then citing *Mickalis*, 645 F.3d at 137 n.23); *see also Moore v. Booth*, 122 F.4th 61, 69 (2d Cir. 2024) ("[W]e

8

have explained that 'prior to entering [a] default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.'") (second alteration in original) (quoting *Mickalis*, 645 F.3d at 137).

### 1. FLSA Claims

In her first and second causes of action under the FLSA, Plaintiff alleges that Defendants underpaid her for work done from "the spring and summer of 2023" through October 2023, and did not pay her at all from October 2023 through February 2024. Dkt. No. 1 at ¶¶ 50, 54. Plaintiff alleges total unpaid wages of $42,430. Dkt. No. 14-4 at ¶ 34. Plaintiff also states that she was offered and paid regular wages prior to the periods of alleged underpayment and nonpayment. *See* Dkt. No. 1 at ¶¶ 14, 22-25.

Plaintiff brings her first FLSA cause of action pursuant to 29 CFR § 1620.33, stating that the regulation governs "all wages withheld in violation of the FLSA" as if they were unpaid minimum wages under the FLSA. Dkt. No. 1 at ¶¶ 48-51. In her second FLSA cause of action, Plaintiff claims that because Defendants first underpaid and then did not pay her at all while she was working full-time, "she therefore was paid less than minimum wage" for the purposes of the FLSA minimum wage requirement. Dkt. No. 1 at ¶¶ 52-58; *see* 29 U.S.C. § 206.

Congress passed the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Gould*, 2020 WL 2042332, at *5 (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). To that end, the FLSA requires that employers pay a minimum wage and limits employees' maximum working hours before employers must provide overtime compensation. *Id.* (citing *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1266 (4th Cir. 1996); *see* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a). To vindicate their rights and receive what they are owed under the FLSA, employees may seek damages "in the amount of their unpaid

minimum wages" and an equal amount of liquidated damages where appropriate. 29 U.S.C. § 216(b) (providing a cause of action for both minimum wage and overtime compensation violations).

The Equal Employment Opportunity Commission ("EEOC") enacted 29 CFR § 1620.33 pursuant to the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), which in turn is an amendment to the FLSA. 29 CFR § 1620.1 (Basic Applicability of the Equal Pay Act). Congress enacted the EPA to eliminate discriminatory compensation between men and women for the doing the same work. *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). The EPA thus "required employers to pay equal wages for equal work." *Id.* (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). An employee suing under the EPA must first establish a prima facie case of discrimination by showing that "(1) the employer pays different wages to employees of the opposite sex, (2) the employees perform equal work in jobs requiring equal skill, effort, and responsibility, and (3) the jobs are performed under similar working conditions." *Doroz v. Delorio's Foods, Inc.*, 437 F.Supp.3d 140, 157 (N.D.N.Y 2020) (citing *Belfi*, 191 F.3d at 135). If an employee does establish a prima facie case and a court finds that an employer withheld wages on the basis of sex in violation of the EPA, then the regulation instructs that those wages "have the status of unpaid minimum wages or unpaid overtime compensation under the FLSA." *See* 29 C.F.R. § 1620.33(a).

### 2. Plaintiff's Claims for Unpaid Wages

Here, Plaintiff has not alleged a plausible claim under the FLSA. The Court considers each of Plaintiff's claims in turn.

With respect to Plaintiff's first cause of action, the EPA does not apply. Plaintiff does not put forward any allegation of discrimination in pay based on sex. *See generally* Dkt. No. 1. Rather, on the face of the complaint, Plaintiff merely seeks to recover her unpaid salary. In support of her

10

claim under the EPA, Plaintiff argues that "all wages withheld in violation of the FLSA have the status of unpaid minimum wage under the FLSA under 29 C.F.R. § 1620.33." Dkt. No. 1 at ¶ 49. However, Plaintiff misreads the regulation. The regulation provides that "wages withheld in violation of the Act have the status of unpaid minimum wages"—referring to the EPA as "the Act," *not* the FLSA more broadly. 29 C.F.R. § 1620.33(a); *see generally* 29 C.F.R. § 1620. This reading comports with the statutory authority under which the EEOC promulgated the regulations governing the EPA and maintains the narrow reach of the FLSA. *See generally* 29 C.F.R. § 1620 (articulating rules for how apply the Equal Pay Act); *see Gould*, 2020 WL 2042332, at *5 ("The FLSA is best understood as the minimum wage/maximum hour law.") (quoting *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th Cir. 2015)). In contrast, Plaintiff's reading of the regulation would impermissibly expand the scope of the FLSA beyond its well-settled, limited purpose—that is, providing rights and remedies regarding minimum wage, overtime compensation, and, through the EPA, discrimination based on sex—by instead making *all* claims for back pay actionable under its authority. *See generally* Fair Labor Standards Act of 1938, Ch. 676, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201–219). Without allegations of discrimination based on sex, Plaintiff cannot request relief under the EPA regulation.

With respect to Plaintiff's second FLSA cause of action, Plaintiff also fails to allege a plausible minimum wage violation. To state a minimum wage claim, a plaintiff must at least allege facts about her salary and working hours such that one could use a simple calculation to determine the amount owed per pay period. *Pineda v. Tokana Café Bar Restorant Inc.*, No. 160-CV-1155, 2017 WL 1194242, at *2 (S.D.N.Y Mar. 30, 2017). Then, the Court asks whether "the amount of compensation received . . . results in a straight-time hourly rate that is less than the applicable federal minimum wage." *Gregory v. Stewart's Shops Corp.*, No. 7:14-cv-00033, 2015 WL

11

893058, at *3 (N.D.N.Y Mar. 2, 2015).

Plaintiff alleges that she was a full-time salaried employee making up to $80,000 per year and claims $42,430 in unpaid wages. Dkt. Nos. 14-1 at ¶¶ 10-13, 14-4 at ¶ 34. Plaintiff does not allege exactly how much she was paid bi-weekly but presents documentary evidence allowing the Court to infer that she was making roughly between $2,692-$3,076 bi-weekly before deductions. *See* Dkt. No. 14-2 (payroll detail from payroll company). Plaintiff alleges that Defendants underpaid or did not pay her while she was working full-time between the "spring and summer of 2023" and the beginning of February 2024. Dkt. No. 1 at ¶¶ 45, 54-56. Plaintiff does not allege specific dates or weeks for which she is seeking unpaid wages, but based on Plaintiff's evidence, the Court infers that during the periods of alleged underpayment and nonpayment, Plaintiff received $42,307.85. *See* Dkt. No. 14-2.

These facts, assumed true, do not establish a minimum wage violation. Plaintiff has alleged facts showing that she received more than the applicable federal minimum wage. Even accounting for the weeks that the documentary evidence shows she was not paid and inferring that she was also not paid for the weeks for which she does not present evidence, Plaintiff still received more compensation than the total minimum wage that would be due.[2] Thus, the Court finds that Plaintiff's allegations and supporting evidence do not establish that she received a straight-time

---

[2] The Court infers from Plaintiff's evidence that Defendants allegedly began underpaying Plaintiff starting with the pay period on which payment was to be made on March 2, 2023, which corresponds to roughly mid-February 2023. *See* Dkt. No. 14-2 (payroll detail). Plaintiff alleges that Defendants stopped paying her in October 2023, and that she stopped working for Defendants in "the beginning of February 2024," which the Court infers as February 2, 2024, consistent with a bi-weekly pay cycle. *See* Dkt. No. 1 at ¶¶ 30, 45. The Court therefore infers that Defendants underpaid or did not pay Plaintiff her full-time salary for 50 weeks. For that period, Plaintiff's evidence shows that she received the equivalent of a straight-time hourly rate of $21.15 per hour. The straight-time hourly rate at the applicable minimum wage is $7.25 per hour, which for 50 weeks at 40 hours per week totals $14,500. *See* 29 U.S.C. § 206.

hourly rate less than the applicable federal minimum wage. *See Gould*, 2020 WL 2042332, at \*5 ("[I]t is well settled that the FLSA 'does not provide wage payment or collection procedures for an employee's usual or promised wages or commissions in excess of those [minimum and overtime wages] required by the FLSA.'") (quoting *Gwaltney v. Barbour*, No. 1:15-cv-771, 2015 WL 5774799, \*1 (M.D.N.C. Sept. 30, 2015) (quoting *Handy Reference Guide to the Fair Labor Standards Act*, at p. 1, http://www.dol.gov/whd/regs/compliance/wh1282.pdf) (other citations omitted)) (quotation marks omitted). Rather, Plaintiff has merely alleged that Defendants failed to fully pay her above-minimum wage salary. *See McCormick v. Phinizy & Phebe Handmade LLC*, 18-CV-917-ENV-SJB, 2020 WL 13572189, at \*4 (E.D.N.Y Aug. 17, 2020) ("[A] complaint fails to state a FLSA minimum wage claim where all that is alleged is a failure to pay an employee's above-minimum wage salary; instead, such a claim amounts to a breach of an employment contract claim.").

For these reasons, the Court finds that Plaintiff has not alleged plausible claims for unpaid minimum wages under the FLSA and denies her motion for default judgment as to these claims.

### 3. Plaintiff's Recordkeeping Claim

In her fifth cause of action, Plaintiff alleges that Defendants "willfully failed to keep accurate time and payroll records" in violation of the FLSA. Dkt. No. 1 at ¶¶ 77-79 (citing 29 U.S.C. § 211(c); 29 C.F.R. § 516.2). Even assuming this allegation is true, neither the text of the FLSA nor the regulation that Plaintiff cites provides a private right of action for such a violation. *See DeLorenzo v. Coffey*, 24-CV-1735 (JPO), 2025 WL 753951, at \*8 (S.D.N.Y Mar. 10, 2025); *see also* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Accordingly, courts in this circuit have consistently held that neither the FLSA nor any of its supporting regulations allows an employee to sue her employer for a recordkeeping violation. *DeLorenzo*, 2025 WL 753951, at \*8 (citing *Garcia v.*

13

*2390 Creston Realty LLC*, No. 23-CV-1129, 2024 WL 2959254, at *5 (S.D.N.Y. June 11, 2024) (holding no private right of action for recordkeeping in FLSA); *Mota v. Abalon Exterminating Co., Inc.*, No. 22-CV-7602, 2024 WL 4202687, at *8 (S.D.N.Y. Sept. 16, 2024) (collecting FLSA cases)).

The Court here also declines to find a private right of action and dismisses Plaintiff's FLSA recordkeeping claim.

### D. Supplemental Jurisdiction over Plaintiff' Remaining Claims

Because the Court has dismissed all claims over which it has federal question jurisdiction, it must now consider whether to exercise supplemental jurisdiction over Plaintiff's remaining claims under state law. In its discretion, the Court declines to exercise supplemental jurisdiction over those claims. *See Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 117 (2d. Cir. 2013).

Here, the Court has dismissed Plaintiff's federal claims at an early stage of the litigation. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006). The defendant has neither responded nor appeared in the case, and the Court is not aware of any exceptional circumstances that would weigh in favor of retaining jurisdiction. As such, the Court dismisses Plaintiff's state law claims without prejudice. *See, e.g., Mazzie* v. *Admar Supply Co., Inc., et al.*, 1:22-CV-01181 (AJB/TWD), 2025 WL 2771782, at *19 (N.D.N.Y. Sept. 26, 2025) (citing *Kolari*, 455 F.3d at 123).

### V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Plaintiff's motion, Dkt. No. 14, is **DENIED**; and the Court further

**ORDERS** that the Plaintiff's claims for minimum wage and recordkeeping violations under the FLSA are **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Plaintiff's claims under the NYLL and New York state common law are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

Dated: October 22, 2025
Albany, New York

Anne M. Nardacci
U.S. District Judge